FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 19, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HEIDI S.,[1]

                      Plaintiff,

       v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                  Defendant.

No.    4:23-cv-05169-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to anxiety, depression, attention deficit hyperactivity disorder (ADHD), fatigue, post-traumatic stress disorder (PTSD), dizziness, fainting, morbid obesity, a somatoform disorder, migraine headaches, chronic psychogenic pain, irritable bowel syndrome, and fatty liver disease, Plaintiff Heidi S. claims that she is unable to work fulltime and applied for disability insurance benefits and supplemental

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

security income benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of Jeffrey Jamison, DO; Justin Olswanger, DO; Steven Golub, MD; Daniel Eslinger, PMHNP; David Morgan, PhD; and Jeffrey Andert, PhD. Plaintiff also argues that the ALJ failed to consider the third-party statement of her mother. As is explained below, the ALJ erred in her consideration of the medical opinions and her failure to consider the opinions of the medical experts that an evaluation from a psychiatrist was necessary. This matter is remanded for further proceedings.

## I.    Background

In May 2020, Plaintiff filed an application for benefits under Title 2 and in June 2020, she filed an application for benefits under Title 16, with both claiming disability beginning January 1, 2014,[2] based on the physical and mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in October 2022, at which Plaintiff appeared with her

---

[2] This was later amended to June 17, 2019, as noted below.

[3] AR 270, 279, 301.

[4] AR 177, 181, 192.

representative and testified.[5]  A vocational expert and two medical experts, a physician and a psychologist, also appeared and testified.[6]

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[8] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Michael Brown, PhD, and Ruth Childs, MD, to be persuasive.

- The opinions of state agency evaluators Norman Zubrowsky, PhD, and Maria Rehrig, MD, to be persuasive.

- The opinions of consultative examiner Lynda Ivy, PhD, that Plaintiff's physical limitations are self-imposed to be persuasive.

- The opinions of consultative examiner Jeffrey Jamison, DO, to be not persuasive.[9]

---

[5] AR 36-76.

[6] *Id.*

[7] AR 14-35.  Per 20 C.F.R. §§ 404.1520(a)-)g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 23-25.

[9] It appears that there is a typo in the decision which says the opinions "are not supported, not consistent, and are persuasive."

- The opinions of medical expert Steven Golub, MD, to be generally persuasive.

- The opinions of treating counselor Daniel Eslinger, PMHNP, to be not persuasive.

- The opinions of State Agency reviewer David Morgan, PhD, to be not particularly persuasive.

- The opinions of consultative examiner Linda Ivy, PhD, regarding Plaintiff's mental limitations to be generally persuasive.

- The opinions of medical expert Jeffrey Andert, PhD, to be generally persuasive.[10]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023.

- Plaintiff had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, generalized anxiety and anxiety related disorders, somatoform disorder, morbid obesity, migraine headaches, and chronic psychogenic pain.

---

[10] AR 25-28.

DISPOSITIVE ORDER – 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  She can stand and/or walk up to four hours, however, she needs the freedom to sit/stand, as needed, to accommodate the four-hour stand/walk limitation.  She can occasionally perform postural activities.  She cannot climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to noise and vibration. She must avoid more than moderate exposure to hazards such as unprotected heights and dangerous moving machinery.  She is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions.  She is able to maintain concentration, persistence, and pace for two-hour intervals between regularly scheduled breaks.  She needs a predictable work enviro [sic] with seldom changes.  She can make basic judgments.  She cannot do assembly-line pace or similarly fast-paced work.  She can have up to brief and superficial interaction with the public and coworkers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a marker (DOT 209.587-034), a routing clerk (DOT 222.687-022), and a marker II (DOT 920.687-126).[11]

---

[11] AR 19-29.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[12]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[13] and such error impacted the nondisability determination.[14] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

---

[12] AR 265.

[13] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[14] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[15] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

# III.    Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when evaluating the medical opinions and erred in not considering her mother's third-party witness statement.  As is explained below, the Court concludes that the ALJ consequentially erred in her evaluation of the medical opinion evidence.

## A.    Medical Opinion: Plaintiff establishes consequential error

Plaintiff argues the ALJ erred in her evaluation of the medical opinions. Specifically, Plaintiff first argues that the ALJ erred in accepting several of the limitations imposed by Dr. Jamison but not accepting his limitation that Plaintiff needed a cane due to dizziness and did not explain why she accepted some but not all of his opined limitations.  She asserts that the ALJ erred in rejecting Dr. Olswanger's opined limitations because he explained that they were psychogenic and the ALJ accepted that finding and found Plaintiff suffered from a conversion disorder but did not explain her reasoning about his opinion of limitations resulting from the conversion disorder.  Plaintiff argues that the ALJ erred in accepting Dr. Golub's opinions as persuasive but ignoring that he opined that there was a psychogenic basis for Plaintiff's symptoms. Plaintiff asserts that the ALJ improperly reasoned that the opinion submitted by Dr. Morgan was submitted on a checkbox form. Plaintiff also asserted that the ALJ erred in finding Dr. Morgan's opinions were unsupported.  Lastly, Plaintiff asserts that the ALJ erred in finding Dr. Andert's opinions persuasive but ignoring that, like Dr. Golub,

he opined that there was a psychogenic basis to Plaintiff's complaints and believed that she should have been evaluated by a psychiatrist.

### 1. Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[16] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[17] Supportability and consistency are the most important factors,[18] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[19] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced

---

[16] 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b).

[17] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

[18] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

[19] *Id.* §§ 404.1520c(b)(2);  416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

training or experience to specialize in the area of medicine in which the opinion was being given.[20] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[21]

    2.  <u>Testimony</u>

    On October 13, 2022, Plaintiff appeared with her attorney before ALJ Marie Palachuk for a hearing.[22]  Plaintiff testified, a vocational expert testified, a physician testified as a medical expert, and a psychologist testified as a medical expert.[23]

    a.  <u>*Dr. Golub*</u>

    Steven Golub, MD, testified as a medical expert.[24] Dr. Golub stated that he had not treated nor examined Plaintiff but had reviewed her medical file up to Exhibit 22F.[25] Dr. Golub testified that Plaintiff's physical impairments were severe morbid obesity, climate vertigo with dizziness, migraine headaches, and irritable bowel syndrome.[26]  He stated that Plaintiff had subjective complaints but there

---

[20] Id.

[21] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[22] AR 36-76.

[23] *Id.*

[24] AR 41-45.

[25] AR 41.

[26] AR 42.

was little to no evidence that the there was a physical etiology for her complaints.[27]

He said she had seen multiple doctors and that there was a psychogenic overlay

and severe symptoms related to generalized anxiety disorders but he was not an

expert regarding those issues.[28] He said that an EEG and an MRI of the brain were

normal and the diagnosis was consistent with generalized anxiety disorder.[29]  He

noted that the doctor did not find a physical etiology and diagnosed steatosis, or

fatty liver which he felt did not cause significant symptomology.[30]

Dr. Golub discussed a record that Plaintiff attended a consultative

examination and the examiner found eight trigger points, which raised a question

of fibromyalgia; and that the examiner noted that she walked with a cane and had

a slow gait but was not ataxic.[31] He also noted that Plaintiff had normal motor and

sensory function and there was not significant physical finding to support a

physiological reason for her symptoms.[32]  He said that there was nothing in the

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] AR 43.

[32] *Id.*

evidence which supported a physiologically based need for a cane but acknowledged that there were subjective complaints of unsteadiness, dizziness, or vertigo.[33]

Dr. Golub stated that the only medically determinable impairment from a physiological basis was a fatty liver.[34]  Dr. Golub reiterated that there was no physiological basis for a cane and stated that it was not apparent in the record why the treating sources prescribed the cane.[35]  Dr. Golub stated that at least one of the doctors who was treating Plaintiff diagnosed her with a conversion disorder.[36]

      *b.*   <u>*Dr. Andert*</u>

Jeffrey Andert, PhD, testified as a medical expert.[37]  Dr. Andert stated that he had never examined or treated Plaintiff but had reviewed her medical records through Exhibit 25F.[38] He stated that the record supported that Plaintiff suffered from a major depressive disorder, recurrent of moderate severity.[39]  He said that the record also indicated an anxiety disorder, which was referenced as social anxiety with a generalized anxiety disorder, panic disorder, and post-traumatic

---

[33] *Id.*

[34] *Id.*

[35] AR 44.

[36] AR 45.

[37] AR 45-58.

[38] AR 46.

[39] AR 46-47.

stress disorder.[40]  He said that her symptoms were a moderate degree based on her own reports.[41] He said that there are several additional diagnoses in the record which he thought were not supported such as a diagnosis of schizoaffective disorder which Plaintiff's nurse practitioner made on the basis of his auditory hallucinations.[42] He believed that more recent records showed no evidence of psychosis.[43]  He also thought a diagnosis of attention deficit hyperactivity disorder (ADHD) was not supported; a diagnosis of possible personality disorder was not supported; and that post-traumatic stress disorder was not consistently supported.[44]  He noted that there were reports of numerous physical symptoms in the record with no physiological basis which raised suspicion of a somatoform disorder.[45]  He said that the record raised a suspicion to him that there was a psychogenic or psychosomatic basis for Plaintiff's symptoms he did not see a formal evaluation for that or treatment.[46] When Dr. Effinger's diagnosis of conversion

---

[40] AR 47.

[41] *Id.*

[42] AR 47-48.

[43] AR 48.

[44] *Id.*

[45] *Id.*

[46] AR 48-49.

1  disorder was pointed out, he stated that he had not been able to read the

2  handwriting but that it was consistent with the record.[47]

3      He stated that she would have a moderate limitation in acquiring, using,

4  and recalling information based on her Wexler test and a lack of documentation of

5  intellectual, academic, or cognitive deficits.[48]  In interacting with others she would

6  have a moderate restriction based on reports that anxiety contributed to discomfort

7  in social situations.[49]  He stated that her concentration, persistent, and pace would

8  also be moderately limited based on the fact that she had difficulty processing

9  visual information.[50] In terms of adaptation and management, he opined she would

10 have a moderate restriction based on her dependent living situation and

11 management of symptoms with medication and therapeutic support.[51]  He stated

12 that she met paragraph one of the C criteria but did not meet paragraph 2 because

13 her adjustment was at more than a marginal level.[52]

---

[47] AR 49.

[48] AR 50.

[49] *Id.*

[50] *Id.*

[51] AR 50-51.

[52] AR 51.

Dr. Andert opined that Plaintiff would be able to understand, remember, and carry out simple, routine, and repetitive tasks.[53]  He opined that she would be able to maintain concentration, persistence, and pace for two-hour intervals.[54]  He opined that she would need a predictable environment with seldom change.[55] She would be able to make judgments regarding simple work.[56]  He opined that she would not be able to do assembly line or fast paced work and should have only brief superficial interaction with coworkers and the public.[57]

When asked by Plaintiff's attorney to consider the opinions of medical sources at Exhibit 16F and Exhibit 19F that Plaintiff suffers from a conversion disorder and Plaintiff should have a neurological consultation, Dr. Andert stated that this was consistent with his earlier statement that the physical symptoms appeared to have a psychogenic basis.[58]  Dr. Andert stated that he was puzzled that Plaintiff was not referred to a psychiatrist to evaluate her for a somatoform disorder.[59]  Dr. Andert stated that he could not see that there was a trigger for

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] AR 51-52.

[58] AR 52-53.

[59] AR 53.

DISPOSITIVE ORDER - 14

Plaintiff's episodes of fainting, blacking out, vertigo, and dizziness.[60]  He said that he considered that she was working on a part-time basis.[61] He stated that the record showed that she had dizzy spells both at work and when not at work.[62]

Dr. Andert states that he took under consideration the type of simple, routine work which he limited Plaintiff to when he opined that she would not be off task more than ten percent of the time.[63]  He stated that he considered that in the record there was no indication that Plaintiff had issues with attendance when she was working part-time.[64]

3.    Analysis

Initially, the Court concludes that the ALJ erred in finding the opinions of Dr. Ivy that Plaintiff's physical limitations were "learned behaviors" was error.[65] Dr. Ivy is a psychologist and is not qualified to render an opinion as to physical limitations.  Moreover, the ALJ compounded that error when she reasoned that the opinions of state agency evaluators Dr. Brown and Dr. Rehrig were persuasive because they were supported by Dr. Ivy's opinions.  Thus, not only did the ALJ err

---

[60] AR 53-54.

[61] AR 55.

[62] AR 55-56.

[63] AR 57.

[64] *Id.*

[65] AR 25-26.

in her reasoning regarding Dr. Ivy but she allowed that error to taint her consideration of Dr. Brown and Dr. Rehrig's opinions.

The Court also concludes that the ALJ erred in failing to fully consider the testimony of the medical advisors that the record required development.

a.    _The ALJ's consideration of Dr. Golub's testimony_

Dr. Golub's testimony was more remarkable in what opinions he declined to render than it was for those he did render.  Dr. Golub was clear in his testimony that there was a psychiatric component to Plaintiff's symptoms.  He stated that he did not see any evidence of a physical etiology for Plaintiff's symptoms and noted that multiple doctors had found that there was a psychogenic overlay due to Plaintiff's severe symptoms.[66]  Dr. Golub declined to opine regarding those limitations, as he was not a specialist in that area.[67]  While Dr. Golub did not state that the specialist necessary for such an evaluation is a psychiatrist, as Dr. Andert later did, he made clear that there were in fact symptoms caused by Plaintiff's conversion disorder which he was not qualified to evaluate.  Dr. Golub reiterated twice that more than one medical source had diagnosed Plaintiff with a conversion disorder.[68]

---

[66] AR 42.

[68] AR 43, 45.

The ALJ articulated her consideration of Dr. Golub's opinions, and stated the following reasoning:

> Medical expert, Dr. Steven Golub, M.D., testified that there was no independent objective medical basis or known cause for the claimant's described neurological symptoms, such as dizziness and falling with loss of consciousness.  Dr. Golub supported this analysis/opinion by citing the EEG study, from neurological examination, which proved to be "within normal limits", further elaborating that no etiology was found for her reported symptoms (Exhibit 12F, p. 4; 14F, p. 14).  Dr. Golub also analyzed the consultative examination findings, specifically noting that there was no ataxia evident and, in general, no anatomical or pathological basis for the claimant's symptoms related to falling or use of a cane for ambulation.  Dr. Golub's opinions are largely consistent with the record.  For example, there is evidence for the presence of chronic psychogenic pain, which could be attributed to some of the claimant's neurological symptoms and manifestations (Exhibit 16F, p. 3; 17F, p. 1).  This is consistent with the totality of the record and the reasoned testimony of Dr. Golub.  The undersigned finds the opinion of Dr. Golub is generally persuasive.[69]

On its face this reasoning is flawed and indicates that the ALJ did not consider Dr. Golub's testimony in the context in which it was intended to be taken. The ALJ articulates that Dr. Golub did not find any basis for Plaintiff's symptoms, but that is not the case.  Dr. Golub stated that there was no physical basis for Plaintiff's symptoms but stated three times that multiple sources had diagnosed a conversion disorder, which would in fact be a basis for Plaintiff's symptoms.[70]

---

[69] AR 26-27.

[70] AR 42, 45.

Moreover, Dr. Golub stated that he was not able to address the symptoms of a conversion disorder because it was not within his area of expertise.[71]

Although Dr. Golub was not as clear in his testimony that Plaintiff should have been sent for an evaluation by a psychiatrist, he made clear that even though he was an experienced, educated physician he was not qualified to render an opinion as to limitations which were both physical and psychiatric in nature.  It would stand to reason that when an experienced, licensed physician states that a determination can only be made by someone with a higher degree of specialty than he has, that determination cannot be properly made by a person with no medical degree.  The ALJ erred in failing to develop the record.

b.    _The ALJ's consideration of Dr. Andert's opinions_

Dr. Andert's testimony was consistent with Dr. Golub's testimony that Plaintiff's medical providers had diagnosed her with a conversion disorder and that the medical record required development.[72] Moreover, where Dr. Golub simply stated that he was not an expert in such issues, Dr. Andert stated that additional testing should have been done and that he was puzzled why Plaintiff had not been sent to a psychiatrist to evaluate her conversion disorder.[73]

---

[71] AR 42.

[72] AR 52-53.

[73] AR 53.

The ALJ articulated the following reasoning for her consideration of

Dr. Andert's opinions:

> Medical expert, Dr. Jeffery Andert, Ph.D., testified that claimant's mental health impairments from depressive disorder; anxiety-related disorders including, general anxiety, social anxiety, panic disorder; and PTSD cause moderate limitations in the four relative domains of function. Dr. Andert opined that the claimant would be able to understand and follow simple instructions and tasks of a predictable nature; make simple work-related judgments; and have brief superficial interaction with coworkers and the public. These opinions are supported, and are consistent, with multiple citations to the record, including a mental health rating scale performed on consultative examination (Exhibit 2F, p. 7; 9F; 14F; 16F; 19F; 23F; 25F). Dr. Andert elaborated extensively as to the claimant's adequate intellect, intact memory and concentration, occasional social involvement, ability to adapt, and ability to perform activities of daily living and assist with management of her impairments (Exhibit 2F, p. 7; 9F). The undersigned finds the testimony and opinions of Dr. Andert to be well supported, consistent with the record, and generally persuasive.[74]

While the consideration of Dr. Andert's opinions does not reference his

testimony that the record was undeveloped, the ALJ did reference his statement

that additional testing was necessary, and stated:

> The undersigned will incorporate assessment of the headache/loss of consciousness episodes in evaluating the claimant's mental disorders, which include, formally, major depressive disorder, generalized anxiety and anxiety related disorders, and somatoform disorder. The disorders of conversion disorder and PTSD, according to the mental health expert who testified at the hearing, Dr. Andert, Ph.D., the record does not contain the necessary clinical data or testing to officially confirm or find diagnoses for PTSD or conversion disorder.[75]

---

[74] AR 28.

[75] AR 24.

The ALJ's treatment of Dr. Andert's testimony is deficient.  While she acknowledges that he stated additional testing was necessary, she failed to acknowledge his statement that a psychiatrist should have evaluated Plaintiff. Moreover, again instead of developing the record to obtain such testing she has formulated her own non-expert assessment of Plaintiff's limitations.  An ALJ is not a qualified medical expert and should not attempt to make her own medical assessment.[76]  The ALJ acknowledged that the record was undeveloped and then endeavored to fill in the blanks with her own assessment.

"The ALJ always has a special duty to fully and fairly develop the record" to make a fair determination as to disability, even where, as here, "the claimant is represented by counsel."[77] This "affirmative responsibility to develop the record" is necessary to ensure that the ALJ's decision is based on substantial evidence.[78]

The Court concludes that remand is warranted for the ALJ to properly develop the record.

      c.    *The ALJ's consideration of Dr. Jamison and Dr. Olswanger's opinions*

Plaintiff asserts that the ALJ erred in finding the opinions of Dr. Jamison and Dr. Olswanger to be unpersuasive.  Because the Court has remanded the case

---

[76] *Day v Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

[77] *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (cleaned up).

[78] *Id.* at 1184.

1    with direction that the record be developed as to Plaintiff's conversion disorder,

2    their opinions will be reevaluated as to its consistency with the newer evidence.

3    Accordingly, the Court finds this issue to be moot.

4        4.   <u>Summary</u>

5        Because the ALJ failed to properly consider the testimony of the medical

6    experts that the record needed to be developed with regard to Plaintiff's conversion

7    disorder, a remand is warranted.

8    **B.**    **Third-Party Statement: The Court finds the issue moot.**

9        Plaintiff argues the ALJ failed to properly assess the third-party witness

10   statement of her mother.  As discussed above, the ALJ failed to properly develop

11   the record.  Because the Court has remanded the case for consideration of the

12   record as a whole, the Court finds this issue is moot.

13   **C.**    **Remand for Further Proceedings**

14       Plaintiff submits a remand for payment of benefits is warranted. The

15   decision whether to remand a case for additional evidence, or simply to award

16   benefits, is within the discretion of the court."[79] When the court reverses an ALJ's

17

18

19

20

---

21   [79] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*,

22   761 F.2d 530 (9th Cir. 1985)).

23

1  decision for error, the court "ordinarily must remand to the agency for further

2  proceedings."[80]

3      The Court finds that further development is necessary for a proper disability

4  determination. Here, it is not clear what, if any, additional limitations are to be

5  added to the RFC. Therefore, the ALJ should properly consider the opinion

6  evidence and make findings at each of the five steps of the sequential evaluation

7  process.

8                    **IV.    Conclusion**

9  Accordingly, **IT IS HEREBY ORDERED**:

10   1.      The ALJ's nondisability decision is **REVERSED**, and this matter is

11           **REMANDED** to the Commissioner of Social Security for further

12           proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

13   2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**,

14           enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

15

16   //

17

18

19

20  [80] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595

21  ("[T]he proper course, except in rare circumstances, is to remand to the agency for

22  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

23  775 F.3d 1090, 1099 (9th Cir. 2014).

1       IT IS SO ORDERED. The Clerk's Office is directed to file this order and

2   provide copies to all counsel.

3       DATED this 19th  day of April 2024.

4                           _____

5                               EDWARD F. SHEA
                            Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DISPOSITIVE ORDER - 23